United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

    Plaintiff,

v.

PRICEWATERHOUSECOOPERS HEALTH AND WELFARE BENEFIT PLAN; LIFE INSURANCE COMPANY OF NORTH AMERICA, et al.,

    Defendants.

No. C 13-02710 JSW

**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    Now before the Court are the cross-motions for summary judgment filed by Plaintiff John Doe ("Plaintiff") and by Defendants Life Insurance Company of North America ("LINA") and PricewaterhouseCoopers Health and Welfare Benefit Plan (the "PWC Plan"). These matters are now fully briefed and ripe for decision. The Court finds that these matter are appropriate for disposition without oral argument and are deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for June 13, 2014 is VACATED. Having considered the parties' papers, relevant legal authority, and the record in this case, the Court denies both motions for summary judgment.[1]

---

[1] The Court GRANTS Plaintiff's request to file the administrative record under seal. Fed. R. Evid. 201.
    In violation of the Northern District Civil Local Rules, both Plaintiff and Defendants assert evidentiary objections to the evidence submitted by the opposing party in a separate brief. Pursuant to Northern District Civil Local Rule 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum." The Court declines to address these evidentiary objections filed in violation of the local rules.

**BACKGROUND**

Plaintiff was a global partner at PricewaterhouseCoopers when he contends that he became disabled. The PCW Plan defines disability and disabled as "A Partner is Disabled if, because of Injury or Sickness, he or she is unable to perform all of the material duties of his or her regular Occupation. (LINA 0425.) The Plan has a benefit waiting period of six months. (*Id*.) In order to obtain disability payments under the Plan, a Partner must be continuously disabled for the benefit waiting period of six months. (LINA 0428.) The Plan further provides that the insurance company LINA is appointed as the Plan fiduciary for the review of claims for benefits provided by the Policy and for deciding appeals of denied claims. (LINA 0433.) "In this role [LINA] shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." (*Id*.) The Summary Plan Description similarly provides that LINA, as the claims administrator, "has the authority to interpret the terms of the Plan document and benefits under the Plan, and to make any related finding." (LINA 0454.)

The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A.    Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

2

issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Applicable Standard of Review.**

The parties do not agree on the proper standard of review. In general, courts review a denial of benefits challenged under Section 1132(a)(1)(B) under a *de novo* standard of review. Under the *de novo* standard, "in considering motions for summary judgment, the district court must decide whether there are genuine issues of material fact, not whether there was substantial or ample evidence to support the plan administrator's decision." *Mongeluzo v. Baxter Travenol Disability Benefit Plan,* 46 F.3d 938, 942 (9th Cir. 1995).

However, if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts review the decision under the deferential abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added); *see also Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). "There are no 'magic' words that conjure up discretion on the part of the plan administrator." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). In addition, "[i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Glenn*, 554 U.S. at 111 (emphasis and internal quotations omitted).

Plaintiff does not dispute that the Plan gives LINA, as the fiduciary, the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Instead, Plaintiff argues that the discretionary provision should be struck as contrary to California law. To obtain this result, Plaintiff further argues that the Delaware choice of law provision cannot stand. First, Plaintiff argues that because neither LINA nor PCW are headquartered in Delaware, the choice of law provision cannot be supported. (Mot. at 16-17.) In his reply brief, Plaintiff argues that "California law cannot be displaced without a good reason to do so" under the governmental interest test. (Reply at 12.) However, "[w]here a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126, 1128-1129 (9th Cir. 1993). Plaintiff makes no effort to address the proper legal standard, and thus fails to show that following the Delaware choice of law provision would be unreasonable or fundamentally unfair.

Second, Plaintiff argues that because the copy of the application in the administrative record is unsigned, LINA "has no basis for a choice of law in Delaware." (Mot. at 17.) However, to the extent Plaintiff contends that LINA failed to produce a valid copy of the Plan, it is not clear why only the choice of law provision would be invalidated. Plaintiff has not provided any authority to support his proposition that if an application is unsigned, a plaintiff can pick and chose which provision he or she may be uphold as valid and which provisions may

4

1  be struck. Perhaps Plaintiff could contend that the entire Plan was invalid, but then Plaintiff
2  would not have any plan under which he could obtain disability benefits. Plaintiff is not taking
3  this position. In the absence of any authority that the Court may selectively strike certain
4  provisions based on a contention that the entire contract is invalid, the Court declines to do so.

Accordingly, because Plaintiff is seeking disability benefits under the Plan, and Plaintiff has not demonstrated that application of the choice of law provision would be unreasonable or fundamentally unfair, the Court will enforce all provisions of the Plan, including the Delaware choice of law provision. Therefore, the Court shall apply the abuse of discretion standard of review.

As the Supreme Court stated, "[a]pplying a deferential standard of review does not mean that the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan "'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 130 S.Ct. 1640, 1651 (2010) (quoting *Firestone*, 489 U.S. at 111).

> Reasonableness does not mean that we would make the same decision. We must judge the reasonableness of the plan administrator skeptically where, as here, the administrator has a conflict of interest. Even without the special skepticism we are to apply in cases of conflict of interest, deference to the plan administrator's judgment does not mean that the plan prevails.
>
> ...
>
> [T]he test for abuse of discretion in a factual determination (as opposed to legal error) is whether [a court is] left with a definite and firm conviction that a mistake has been committed," and [it] may not merely substitute [its] judgment for that of the fact finder. To do so, [it] consider[s] whether application of a correct legal standard was "(1) illogical; (2) implausible; and (3) without support in inferences that may be drawn from the facts in the record."

*Salomaa v. Honda Long Term Disab. Plan*, 642 F.3d 666, 675-76 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**C.    Questions of Material Fact Preclude Summary Judgment.**

Despite the standard of review favoring Lina's decision, the Court cannot find as a matter of law that Lina's decision to deny disability benefits was reasonable. The Court notes that the Plan defines disabled to mean that Plaintiff cannot perform all of the material duties of

5

1 his regular occupation. Plaintiff was employed as a Global Engagement Partner at PWC for two

2 of PWC's top global clients at the time of his application for disability benefits. (LINA 0121.)

> As such, he lead [*sic*] a team of over 30 partners and 100 PwC professionals located all over the world. His team is responsible for both delivering existing services and developing new business with the client. As the GEP, he is responsible for managing the client relationships at the highest levels of senior management, as well as the overall quality, planning and management of [PwC] engagememts and business development efforts for this client. The engagements include advising the client on all aspect of their global business operations, covering the full spectrum of PwC capabilities (from industry and line of service standpoints).

*Id*. The position description for Plaintiff's job further describes additional responsibilities and expectations. *Id*. The position description provides that the Global Engagement Partner: (1) "[l]ead development and implementation of relationship building and business development strategy. Also supporting teams in execution of key practice development initiatives . . .; in essence, being responsible for achieving business growth from existing clients as well as attracting new clients to the firm[;]" (2) "[m]ust be accessible to internal business partners as well as external clients on a 24-hour a day basis by way of company provided cell phone, laptop, and pager while traveling and working on company related business[;]" (3) "is expected to travel independently at any time for potentially extended period . . . . This includes extensive domestic and internal travel on short notice with the ability to change travel arrangements frequently, as required by the client's priorities[;]" (4) "should be comfortable communicating with key management executives to successfully manage the assigned client base[;]" (5) requires "endurance, high energy, productivity. Typical workweek is 60 hours with additional hours during peak periods[;]" and (6) "ability to access and quickly digest[] large volumes of written information." (*Id*.)

The essential qualifications for a Global Engagement Partner include: (1) "decisiveness, business judgment, ability to explain and defend decisions;" (2) "leadership and general management responsibilities, including ability to plan and organize;" (3) "ability to set strategy, defend strategy, communicate strategy persuasively, revise strategy as appropriate in light of actual results;" (4) "ability to motivate and inspire;" (5) "ability to communicate effectively and to make oral presentations;" and (6) "ability to regularly interface with client executives during

6

meeting including lunches and dinners.  This involves frequent travel to the client's local offices or other locations, sometimes on short notice and possibly multiple times per day." (LINA 0122.)

Therefore, to be able to perform all of the material duties of his occupation, Plaintiff would need to function at a very high, demanding level.  Viewing the evidence in the light most favorable to Plaintiff, there is evidence in the record to support a finding that it was unreasonable to conclude that Plaintiff could do so.  In the initial denial letter, Lina found that the data after Plaintiff completed the residential and subsequent day program for drug rehabilitation on February 24, 2012 did not support "continued total work restrictions." (LINA 0010.) "The data do not support measured cognitive dysfunction, or impairment in activities or independent activities for daily living." (*Id.*)

In the report from Dr. Marcus J. Goldman, he reported from his conversation with Dr. Verby that Plaintiff had a Global Assessment of Functioning ("GAF") of 48 out of 100, that Plaintiff's "functioning is lousy but he is smart enough to do something[,]" that he "complains of mood swings and cannot do anything at night, crashing somewhere around noon or 2 PM." (LINA 0013.)  Dr. Verby's records indicate that Plaintiff had "'markedly' decreased focus, attention, and eye contact.  Affect is flat." Dr. Verby further reported that Plaintiff was "easily distracted, forgetful with significant anxiety and inability to finish projects." (*Id.*)  Dr. Goldman also reported from his conversation with therapist Linda Cohen that Plaintiff has impaired concentration, was "very capable of working, but not in an executive position." (*Id.*)  Dr. Goldman reported from Mr. Lipfield's notes that Plaintiff's affect was flat and that his speech and process was slow.  (LINA 0014.)  Additionally, Dr. Goldman reported that Dr. Chiarotto found that Plaintiff was alert with a stable mood and affect.  (*Id.*)

Dr. Goldman was asked by Lina to evaluate whether the medical documentation supported a finding of total work restrictions and limitations, meaning that Plaintiff was unable to function in a work setting.  (*Id.*)  Although Dr. Goldman reviewed Plaintiff's position description, the question he answered appears to much broader than whether Plaintiff could perform all of the material duties required as a Global Engineer Partner at PWC.  Dr. Goldman

7

1  focused on the records from one of Plaintiff's four treatment providers who found that Plaintiff
2  was alert with a stable mood and affect.  While Dr. Goldman noted that the records from Ms.
3  Cohen and Dr. Verby "detailed general issues such as neurocognitive complaints/ADHD
4  issues," Dr. Goldman stated that "[i]ssues in the context of ADHD and neurocognitive issues
5  such as the interpretation of comprehensive neuropsychological testing [were] beyond [his]
6  expertise. . . ." (*Id.*)  Nevertheless, he rejected the findings of these doctors because they were
7  not accompanied by sufficient narrative progress or treatment notes, and that functional
8  impairment was not supported because there were not findings of "active suicidal or homicidal
9  ideation, vegetative signs, a thought disorder, observable mania, volatility, observable
10 aggression, lethargy, detoxification, somnolence or impaired sensorium."  He further concluded
11 that the data did "not support measured cognitive dysfunction, or impairments in activities or
12 independent activities of daily living."  (LINA 0014-15.)

13 When Lina denied Plaintiff's appeal, it provided the reasoning underlying its decision.
14 (LINA 0289-291).  Lina relied entirely on the report provided by Dr. Goldman.  (LINA 0290.)
15 As noted above, Dr. Goldman addressed the question of whether Plaintiff was unable to
16 function in a work setting, not whether he was able to perform all of the material duties required
17 as a Global Engineer Partner at PWC.  Moreover, although Dr. Goldman rejected the findings
18 of Dr. Verby and Ms. Cohen who detailed general issues such as neurocognitive
19 complaints/ADHD issues, Dr. Goldman stated that interpretation of comprehensive
20 neuropsychological testing were beyond his expertise.  This evidence creates a question of fact
21 and precludes the Court from finding that Lina's decision was reasonable as a matter of law.

22 However, on the other hand, viewing the evidence in the light most favorable to
23 Defendant, there is evidence to support that Lina's finding of no disability was reasonable.
24 One of Plaintiff's treating providers found that he had a GAF of 80.  (LINA 0383.)  Having a
25 GAF of 80 indicates that "if symptoms are present they are transient and expectable reactions to
26 psychosocial stressors and only slight impairment in functioning."  (LINA 0153.)  Although Dr.
27 Chiarottino found that Plaintiff had demonstrated deficits in executive functioning, that opinion
28 was based on Plaintiff's self-reports of his performance at work.  (*Id.*)  One of Plaintiff's

8

1  doctors found Plaintiff to have a stable mood and affect on repeated occasions during the period
2  Plaintiff claims he was disabled. (LINA 0148.)
3      Furthermore, one of the main factors supporting Plaintiff's claim of disability is that he
4  was diagnosed with ADHD. However, "ADHD is a condition that is present from childhood . .
5  . . If [Plaintiff] is now diagnosed with ADHD it is a condition that he has had all his life and has
6  demonstrated his ability to perform at a very high level in his occupation when untreated."
7  (LINA 0153.) Moreover, Plaintiff started being treated for ADHD with medication in March of
8  2012. (*Id*.)
9      Therefore, upon review of the administrative record, the Court finds that there are
10  questions of fact regarding whether Plaintiff is disabled under the terms of the Plan which
11  preclude the Court from granting either party's motion for summary judgment. The Court thus
12  denies the parties' cross-motions for summary judgment.

**CONCLUSION**

14      For the foregoing reasons, the Court denies the parties' cross-motions for summary
15  judgment. IT IS FURTHER ORDERED that the Case Management Conference scheduled for
16  June 13, 2014 is VACATED.
17      Pursuant to Northern District Civil Local Rule 72-1, this matter is HEREBY
18  REFERRED to a randomly assigned Magistrate Judge for purposes of conducting a settlement
19  conference, to be completed within ninety days, if possible. In the event the parties are unable
20  to resolve the matter, they are ORDERED to appear for a further case management conference
21  on September 26, 2014. The parties shall submit a further case management statement by no
22  later than September 19, 2014, setting forth proposed dates for the pretrial conference and trial.
23  In their case management statement, the parties shall also propose a briefing schedule for
24  submitting trial briefs. If the parties wish to have their papers in support of their cross-motions
25  for summary judgment converted into briefing for the bench trial and do not seek to file any
26  ///
27  ///
28  ///

9

additional briefs, they may file a stipulation stating so by no later than September 19, 2014. If the parties file such a stipulation, the further case management conference will be vacated.

**IT IS SO ORDERED.**

Dated: June 11, 2014

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE