IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

    Plaintiff,

v.

PRICEWATERHOUSECOOPERS LLP, et al.,

    Defendants.

No. C 13-02710 JSW

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Now before the Court is the bench trial in the above-captioned matter. Having reviewed the administrative record, other evidence properly before the Court, and the parties' arguments, and based on the Court's findings of fact, for the reasons set forth in this Order, the Court concludes that Life Insurance Company of North America ("LINA") correctly determined that Plaintiff John Doe ("Doe") was not disabled under the terms of the PricewaterhouseCoopers Health and Welfare Benefit Plan (the "PWC Plan").

## BACKGROUND

Doe was a global engagement partner at PricewaterhouseCoopers when he contends that he became disabled. (LINA 0234.) A global engagement partner acts as the face of the company when engaging with clients. (*Id.*) Doe's job requirements included management responsibilities; relationship building and business development strategy; 24-hour accessibility by means of cell phone, laptop, and pager; extensive business and domestic travel, sometimes on very short notice; and the ability to communicate comfortably with key management executives. (*Id.*) Doe's job required a typical workweek of 60 hours, with additional hours as

1  needed during peak work periods.  (*Id.*)  Under the terms of the PWC Plan, "[a] Partner is
2  Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties
3  of his or her regular Occupation."  (LINA 0425.)

4        Doe has struggled with issues related to mental health for much of his life.  He self-
5  reported that, as an infant or toddler he was described as having a high activity level, and as an
6  impulsive, fearful child with a short attention span, who had frequent temper tantrums, and
7  adapted poorly to change.  (LINA 0038.)  As a child, Doe suffered from sexual and emotional
8  abuse, family economic problems, and neglect.  (LINA 0039.)  In elementary school, Doe was
9  evaluated and labeled as hyperactive and a trouble-maker, with poor self control.  (LINA 0040.)
10 These issues persisted in middle and high school.  (LINA 0041.)

11       As an adult, Doe sought professional help related to depression, anxiety, and coping
12 skills on several occasions.  (*See* LINA 0048.)  Doe reported beginning to use alcohol as age 13,
13 and continuing until age 48, with his period of heaviest use between the ages of 30 and 38,
14 when he consumed approximately 10 to 12 drinks per day.  (LINA 0050.)  Defendant also
15 abused cocaine between the ages of 21 and 49, with his period of heaviest use between the ages
16 of 44 and 49 when he abused crack cocaine.  (*Id.*)

17       In 2008, Doe was apparently treated by Richard Lipfield, an MFT specializing in
18 addiction.  (Amended Plaintiff's Motion for Summary Judgment, ECF No. 47, at 3-4, 9.)  Mr.
19 Lipfield referred Doe to psychiatrist Michael Chiarottino.  (LINA 0152.)  Dr Chiarottino treated
20 Doe for depression, and for his alcohol and drug problems.  (*Id.*)  On September 29, 2009, Doe
21 began seeing therapist Linda Cohn for treatment of excessive anxiety and post-traumatic stress
22 disorder.  (LINA 0127.)  Doe presented with the following symptoms: (1) "excessive anxiety
23 that keep [sic] him on edge at work," (2) "constant worry/mind chatter/difficulty
24 concentrating," (3) "mood swings of irritability and depression in the family," (4) "feelings of
25 inadequacy, causing a desire for social isolation," (5) "complaints of fatigue, overwhelm and
26 muscle tension," and (6) "hyper vigilance."  (*Id.*)  Ms. Cohn suggested that Doe might have
27 attention deficit and hyperactivity disorder ("ADHD"), but Doe was resistant to seeking a
28 formal diagnosis, and was unwilling to take medication.  (LINA 0128.)

On December 21, 2011, Doe checked himself into a residential treatment facility to address his alcohol and drug addictions. (LINA 0156.) On February 24, 2012, Doe completed the facility's residential program. (*Id.*) After Doe completed the program, Ms. Cohn referred Doe to Dr. Harry Verby for ADHD testing. (LINA 0128.) On March 19, 2012, Dr. Verby evaluated Doe. (LINA 0027.) Doe reported to Dr. Verby that he had a history of attention and focus problems dating back to early childhood. (LINA 0029.) Doe described to Dr. Verby his feelings of anxiety, depression, and hopelessness, and his continued difficulties in focus and attention span. (*Id.*) Following a battery of tests, Dr. Verby diagnosed Doe with ADHD, Bipolar Mood Disorder, Generalized Anxiety Disorder, and Substance Abuse Disorder. (LINA 0031.)

Doe filed a Long Term Disability Claim with LINA, which was denied on June 29, 2012. (LINA 0147.) In its denial notice, LINA stated that a Senior Claim Manager, a Behavioral Health Specialist, and a Medical Director reviewed Doe's documents, including, but not limited to Behavioral Health Questionnaire forms completed by Dr. Chiarottino and Mr. Lipfield, treatment records from both Dr. Chiarottino and Mr. Lipfield, a Discharge summary and Therapy Notes from Doe's addiction treatment facility, and a copy of Doe's job description as a global engagement partner. (*Id.*) LINA noted that Mr. Lipfield stated that Doe had "been in chronic relapse for several years," and that his focus diminished when under pressure. (LINA 0148.) Mr. Lipfield stated that Doe did not want to go back to work, but had considered doing volunteer work. (*Id.*) Dr. Chiarottino stated, based upon his experience with Doe, and his review of Doe's job description, that he did not believe Doe could "perform at such a high level of responsibility." (*Id.*)

Based upon the information before it, LINA concluded that Doe's symptoms were not so severe as to preclude him from performing his duties as a global engagement partner. (LINA 0149.) LINA stated that the information before it indicated that Doe was substance-free, and continuing treatment for his mental health conditions. (*Id.*) LINA further stated that, although Dr. Chiarottino believed Doe's cognitive issues would prevent him from returning to his job, there were no test results or exam findings in the record to support this conclusion, or to explain

3

1  how Doe's reported cognitive deficits would affect his ability to perform as a global
2  engagement partner. (*Id.*) Finally, LINA stated that the record failed to demonstrate how Doe's
3  ADHD, depression, or anxiety impacted his ability to function. (*Id.*)

4  Doe appealed the denial of benefits; on February 15, 2013, his appeal was also denied.
5  (*See* LINA 0009-11.) On appeal, Dr. Marcus J. Goldman reviewed Doe's records, including all
6  the information before LINA from Doe's initial claim, letters from Dr. Verby and Ms. Cohn,
7  and evaluation and test results from Dr. Verby. (LINA 0012.) Dr. Goldman also spoke
8  personally with Dr. Verby and Ms. Cohn. (LINA 0013.) Dr. Goldman reported from his
9  conversation with Dr. Verby that Plaintiff had a Global Assessment of Functioning ("GAF") of
10 48 out of 100, that Plaintiff's "functioning is lousy but he is smart enough to do something,"
11 that he "complains of mood swings and cannot do anything at night, crashing somewhere
12 around noon or 2 PM." (LINA 0013.) Dr. Verby's records indicate that Plaintiff had
13 "'markedly' decreased focus, attention, and eye contact. Affect is flat." Dr. Verby further
14 reported that Plaintiff was "easily distracted, forgetful with significant anxiety and inability to
15 finish projects." (*Id.*) Dr. Goldman also reported from his conversation with therapist Linda
16 Cohn that Plaintiff has impaired concentration, was "very capable of working, but not in an
17 executive position." (*Id.*) Dr. Goldman reported from Mr. Lipfield's notes that Plaintiff's
18 affect was flat and that his speech and process was slow. (LINA 0014.) Additionally, Dr.
19 Goldman reported that Dr. Chiarotto found that Plaintiff was alert with a stable mood and
20 affect. (*Id.*)

21 LINA asked Dr. Goldman to evaluate whether the medical documentation supported a
22 finding of total work restrictions and limitations, meaning that Plaintiff was unable to function
23 in a work setting. (LINA 0014.) Although Dr. Goldman reviewed Plaintiff's position
24 description, the question he answered appears to be much broader than whether Plaintiff could
25 perform all of the material duties required as a global engagement partner at PWC. Dr.
26 Goldman focused on the records from one of Plaintiff's four treatment providers who found that
27 Plaintiff was alert with a stable mood and affect. While Dr. Goldman noted that the records
28 from Ms. Cohn and Dr. Verby "detailed general issues such as neurocognitive

4

1 complaints/ADHD issues," Dr. Goldman stated that "[i]ssues in the context of ADHD and
2 neurocognitive issues such as the interpretation of comprehensive neuropsychological testing
3 [were] beyond [his] expertise. . . ." (*Id.*) Nevertheless, he rejected the findings of these doctors
4 because they were not accompanied by sufficient narrative progress or treatment notes, and that
5 functional impairment was not supported because there were not findings of "active suicidal or
6 homicidal ideation, vegetative signs, a thought disorder, observable mania, volatility,
7 observable aggression, lethargy, detoxification, somnolence or impaired sensorium." He further
8 stated that the data did "not support measured cognitive dysfunction, or impairments in
9 activities or independent activities of daily living." (LINA 0014-15.) Dr. Goldman concluded
10 that "[f]rom a strictly psychiatric perspective there are no adequate data detailing precisely why
11 claimant would be precluded from working in his usual occupation." (LINA 0015.) Finally,
12 Dr. Goldman stated that "[r]eports of not being able to handle the consequences, inability to set
13 limits and other like statements do not explicitly detail in any clinical fashion why this claimant
14 would be incapable of functioning or working." (*Id.*) In its letter denying Doe's appeal, LINA
15 relied heavily upon Dr. Goldman's report. (*See* LINA 0290.)

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

**ANALYSIS**

The Court has already determined that the proper standard of review in this case is the abuse of discretion standard. (*See* Order Regarding Cross-Motions for Summary Judgment at 5.) As the Supreme Court stated, "[a]pplying a deferential standard of review does not mean that the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan "'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 130 S.Ct. 1640, 1651 (2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

> Reasonableness does not mean that we would make the same decision. We must judge the reasonableness of the plan administrator skeptically where, as here, the administrator has a conflict of interest. Even without the special skepticism we are to apply in cases of conflict of interest,

5

> deference to the plan administrator's judgment does not mean that the plan prevails.
>
> . . .
>
> [T]he test for abuse of discretion in a factual determination (as opposed to legal error) is whether [a court is] left with a definite and firm conviction that a mistake has been committed, and [it] may not merely substitute [its] judgment for that of the fact finder. To do so, [it] consider[s] whether application of a correct legal standard was "(1) illogical; (2) implausible; and (3) without support in inferences that may be drawn from the facts in the record."

*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675-76 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

When reviewing the reasonableness of a benefits decision under the abuse of discretion standard, the Court is limited in which documents it may evaluate. While courts may admit additional evidence when reviewing a benefits decision de novo, under the abuse of discretion standard courts may "consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006).[1]

With respect to the merits of the benefits decision, if there is no conflict of interest, under the abuse of discretion standard the Court must only determine whether LINA's decision was "grounded on *any* reasonable basis." *See Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (emphasis in original). Where, as here, the entity that funds the ERISA plan also evaluates claims, there is a structural conflict of interest. *See id.* ("Under these circumstances, the plan administrator faces a structural conflict of interest: since it . . .

---

[1] In his supplemental briefing before the Court, Doe submits several items of extrinsic evidence. (*See* Plaintiff's Supplemental Brief; Declaration of Laurence F. Padway Re Medical Literature and Citation of Cases.) Doe asks the Court to consider excerpts from DSM-V and DSM-IV-TR, an article relating to ADHD in adults, an unpublished case relating to the proper standard of review, and certain information relating to Dr. Chiarottino's reliability. None of this information is relevant to any actual or potential conflict of interest related to the benefits decision, and it is therefore not properly before the Court at this time. *See Abatie*, 458 F.3d at 970. The Court declines to consider Doe's improper extrinsic evidence, and therefore DENIES AS MOOT Defendants' Motion to Strike, ECF No. 69.

6

also [acts as] the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself."). When a structural conflict of interest exists, the Court must perform a more complex analysis, weighing the conflict as a factor in its analysis. *Id.*; *see also Abatie*, 458 F.3d at 967 (describing the appropriate analysis as being "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record"). Other factors the Court should consider include: (1) "the quality and quantity of the medical evidence," (2) "whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records," (3) "whether the administrator provided its independent experts with all of the relevant evidence," and (4) "whether the administrator considered a contrary SSA disability determination, if any." *Montour*, 588 F.3d at 630 (citation and internal quotation marks omitted). The Court should determine the weight to be given to each factor depending on the facts and circumstances of the particular case. *Id.* If "a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history," the Court should not grant this factor much weight. *See Abatie*, 458 F.3d at 968. Importantly, consideration of these factors does not alter the standard the Court applies, but rather only impacts its application. *Montour*, 588 F.3d at 630.

Having thoroughly reviewed the evidence and considered the conflict of interest issue, the Court concludes that there is no evidence LINA's conflict of interest impacted its benefits decision in this case. Both in its initial denial of benefits, and on appeal, LINA evaluated the opinions of Doe's treatment providers and commissioned independent reviews of their conclusions. In the course of these reviews, LINA commissioned reports by two different doctors, both of whom spoke with Doe's treatment providers about their conclusions regarding Doe's status. Perhaps most significantly, Doe has placed no evidence before the Court indicating that LINA's structural conflict of interest in any way impacted its decision to deny Doe's benefits claim. On this record, the Court therefore concludes that LINA's structural conflict of interest should be accorded little weight.

1    The Court will now review the remaining factors to determine whether LINA had a
2    reasonable basis for denying Doe's claim.
3    The Court finds that, based upon the quality and quantity of medical evidence LINA
4    evaluated, its conclusion to deny Doe's benefits claim was reasonable.  As noted above, in its
5    initial review of Doe's claim, LINA evaluated Doe's treatment records and spoke directly with
6    Dr. Chiarottino. (LINA 0147-48.)  When LINA initially denied Doe's claim, it stated that,
7    while Dr. Chiarottino believed that Doe could not work due to cognitive issues, there were "no
8    formal test results or other exam findings to support the severity of [his] reported cognitive
9    deficits and how these [were] affecting [his] ability to function." (LINA 0149.)  LINA also
10   noted that there was no evidence that Doe's ADHD symptoms, depression, or anxiety, would
11   prevent him from performing his duties as a global engagement partner.  (*Id.*)
12   In his appeal, Doe provided LINA with additional reports from Dr. Verby and Ms.
13   Cohn, detailed above.  Dr. Goldman personally spoke with both Dr. Verby and Ms. Cohn,
14   reviewed the additional reports and test results they submitted, and also reviewed the file from
15   Doe's initial benefits application. (LINA 0010-15.)  From his review, Dr. Goldman concluded
16   that the data did "not support total work restrictions." (LINA 0014.)  Dr. Goldman noted that
17   Doe experienced significant gaps in his treatment, and that there were few narrative progress
18   notes from his treatment providers. (*Id.*)  He conceded that neurocognitive issues, such as those
19   detailed by Dr. Verby and Ms. Cohn, were beyond his area of expertise, but also noted that their
20   opinions were unsupported by any ongoing narrative progress or treatment notes. (*Id.*)  Dr.
21   Goldman concluded that, aside from the period when Doe was being actively treated for
22   addiction, from late 2011 into early 2012, the information before him did not support disability.
23   (LINA 0014-15.)
24   LINA relied heavily upon Dr. Goldman's report in denying Doe's appeal, and also noted
25   that his record was devoid of recent evidence of treatment that would support a conclusion of
26   disability. (LINA 0010.)  LINA stated that "[f]rom a Psychiatric perspective there are no
27   adequate data detailing why [Doe] would be precluded from working in his usual occupation."
28   (*Id.*)  It continued that "[r]eports of not being able to handle the consequences, inability to set

8

limits and other like statements do not explicitly detail in any clinical fashion why [Doe] would be incapable of functioning or working." (*Id.*)

In denying Doe's claim LINA did not dismiss the records or opinions of any of Doe's treatment providers out of hand. Instead, it evaluated them and decided that their opinions simply did not support the conclusion that Doe was unable to perform his regular occupation. In reaching this conclusion it pointed to the lack of test results confirming some of the stated opinions, but also noted that Doe did not maintain a level of treatment with any of his providers that would be consistent with a mental condition severe enough to constitute a disability. Under the applicable standard of review, the Court concludes that this determination was reasonable.

With respect to LINA's decision not to conduct an independent medical evaluation, but instead to rely upon the paper record already before it, the Court finds that this factor weighs slightly against LINA in the reasonableness analysis. However, as noted above, when LINA denied Doe's appeal it had before it records and opinions from four different treatment providers. Under these circumstances, it was not completely unreasonable for LINA to simply review the already gathered information, rather than seek to independently evaluate Doe. Nonetheless, the Court concludes that this factor weighs against a finding of overall reasonableness.

The two remaining factors weigh in favor of LINA. The administrative record in this case is voluminous, and LINA asserts that Doe's entire record was reviewed in consideration of his initial claim, and the augmented record was reviewed in consideration of his appeal. There is no evidence that LINA withheld any relevant evidence from its independent experts. The final factor is not relevant here, given that Doe has no disability determination from the Social Security Administration.

After considering all the relevant factors, the Court concludes that LINA did not abuse its discretion in denying Doe's benefits claim.

Doe argues that LINA's denial of benefits was not reasonable because, on appeal, Dr. Goldman was asked to evaluate whether the data supported total work restrictions, not whether Doe was able to function in his regular occupation. In his report, Dr. Goldman answered the

9

question he was asked. However, when LINA denied Doe's appeal it had before it much more than just Dr. Goldman's report. LINA relied upon the entire record from both Doe's initial claim and his appeal in deciding not to award him benefits. Therefore, the narrower question Dr. Goldman answered does not, by itself, render LINA's decision unreasonable.

The Court finds that Doe has failed to carry his burden of proving that he is disabled under the terms of the PWC Plan. In addition to the factors evaluated above, the Court is particularly persuaded by the following facts that LINA's determination to withhold benefits was reasonable. First, although Doe claims disability from the time he entered the addiction treatment facility through the present, his treatment records simply to do support his contention. Doe relies heavily on the opinions of Dr. Verby and Ms. Cohn, but neither individual treated him regularly during his claimed period of disability. In fact, Doe has not been treated regularly by any of his care providers during his claimed period of disability. The Court agrees with LINA's conclusion that the level of treatment Doe has received during his claimed disability period is simply not consistent with a disabling mental condition. Second, with respect to Doe's ADHD, Doe does not dispute that this issue has plagued him throughout his life, since early childhood. Yet, even with undiagnosed and untreated ADHD Doe was able to successfully work in his chosen occupation for many years. Now that Doe's ADHD is being pharmaceutically treated, the Court finds it reasonable that he should be able to resume the occupation he performed for so long before his condition was treated. Finally, the record before LINA amply demonstrates that Doe has managed to perform, and even excel in life, despite his well-documented mental health issues. For many years, Doe achieved at a high level, even while self-medicating with alcohol and drugs. Now that Doe has decided to address his issues through drug and alcohol rehabilitation, and through pharmaceutical treatment for his diagnosed disorders, he should be far better able to cope with the strain that a high pressure career such as Doe's places on an individual. As Ms. Cohn noted when Doe returned to her for documentation in support of his appeal, Doe "understands that he was self medicating by using alcohol to quiet his chattering mind and crack cocaine to help him focus and organize his thoughts. The right medication for his ADHD and mood swings has now enabled him to function in life with more

10

ease and confidence." (LINA 0129.) The Court finds that Doe's previously poor choices of coping mechanisms do not lead to the conclusion that he cannot now perform all the material duties his regular occupation requires.

**CONCLUSION**

For the foregoing reasons, the Court finds in favor of LINA and against Doe. LINA did not abuse its discretion in determining that Doe was not disabled under the terms of the PWC Plan.

**IT IS SO ORDERED.**

Dated: December 10, 2014

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE